# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| MARKETSHARE CORP. | ) | |
| Plaintiff, | ) | |
| - against - | ) | Civil Action No.: 21-cv-00750 |
| TRANSACTIS, INC. and MASTERCARD, INCORPORATED | ) | |
| Defendants | ) | |

## COMPLAINT

Plaintiff MarketShare Corp. ("Plaintiff" or "MarketShare"), by and through its undersigned attorneys, for its complaint against Defendants Transactis, Inc. ("Transactis") and Mastercard, Incorporated ("Mastercard") (together, the "Defendants") hereby states as follows:

### NATURE OF THE ACTION

1.      Between July 2004 and June 2007, Plaintiff MarketShare provided substantial software technology services to Defendant Transactis under certain verbal and written agreements.  In return for its delivered services, Transactis agreed to compensate MarketShare, in part, by permitting MarketShare to purchase common stock of Transactis.  Because this arrangement did not specify the price at which MarketShare would be allowed to purchase the common stock of Transactis, starting in June 2007, the parties discussed the type of security to be issued to MarketShare and the purchase price associated with such security.  In April 2008, the parties thereupon entered into a written agreement by which MarketShare was issued certain stock options of Transactis with a ten-year exercise period and a specified exercise price based

on the fair market value per share of common stock as represented by Transactis. When

MarketShare timely exercised its stock options in April 2018, however, Transactis, and its now

parent company Defendant Mastercard, improperly denied MarketShare the issuance of any

shares of common stock of Transactis in breach the 2008 written agreement and related stock

option agreement.

      2.     Further, in investigating this improper denial, MarketShare discovered that

Transactis engaged in deceitful, fraudulent, and inequitable behavior in representing the fair

market value and exercise price of the stock options issued to MarketShare and/or thereafter in

determining the fair market value and exercise price of certain other stock options issued to other

employees and consultants of Transactis beginning in January 2009, which fraud and inequitable

behavior served to enrich such other employees and consultants at the expense of MarketShare.

      3.     Plaintiff is entitled to a full recovery of all payments owed by Defendants

in an amount totaling no less than $75,000.00, plus interest and costs.

## PARTIES

      4.     Plaintiff MarketShare Corp. is a Virginia corporation with offices located

at 10728 Old Prescott Rd., Richmond, VA 23238.

      5.     Defendant Transactis, Inc. is a Delaware corporation with offices located

at 1250 Broadway, New York, NY 10001.

      6.     Defendant Mastercard Incorporated is a Delaware corporation with

principal offices located at 2000 Purchase St., Purchase, NY 10577.

## JURISDICTION AND VENUE

      7.     The Court has original subject matter jurisdiction of this action under 28

U.S.C. § 1332 (a)(1), in that this is a civil action where the matter in controversy exceeds the

sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

8.   The Court has specific personal jurisdiction over Transactis because it has an office in this judicial district, conducts business in this judicial district, and because the unlawful conduct asserted herein occurred in, was directed at, and/or emanated in part from this judicial district.

9.   The Court has specific personal jurisdiction over Mastercard because it has an office in this judicial district, it conducts business in this judicial district, and because the unlawful conduct asserted herein occurred in, was directed at, and/or emanated in part from this judicial district.

10.   Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants maintain places of business in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## FACTUAL BACKGROUND

11.   Plaintiff MarketShare is a small company launched by the husband and wife team of Phillip Kovilakath and Sheryn Kovilakath, and provides software technology services to its U.S.-based clients.  From 2004 to 2008, Plaintiff MarketShare's sole employees were Mr. and Mrs. Kovilakath.

12.   Defendant Transactis is the industry leader in electronic bill presentment and payment technologies, and provides of a platform that allows businesses to deliver bills and receive payments through a simple experience.

13.   Defendant Mastercard is a global payments technology company.

### A. Plaintiff Provides Services to Transactis as Invoiced.

14.     Beginning on or about July 1, 2004, Philip Kovilakath ("Kovilakath"), as Plaintiff's principal employee, began providing software development services to Transactis based on a verbal agreement and certain email communications with Mr. Thomas Kohn ("Kohn"), the then-CEO of Transactis (the "2004 Agreement").

15.     In early 2005, Kohn requested that Kovilakath receive a portion of his payment in the form of equity of Transactis due to Transactis' cashflow limitations at around that time.

16.     Kovilakath agreed to such request and, on March 30, 2005, Plaintiff and Transactis entered into a Consulting Agreement ("2005 Agreement"), which replaced the 2004 Agreement in its entirety.  Kovilakath continued to be Plaintiff's principal employee providing services to Transactis under the 2005 Agreement.

17.     The 2005 Agreement required that Transactis pay Plaintiff, for each hour of services, (i) $100 in cash and (ii) $50 in fully-vested common stock of Transactis.

18.     From July 1, 2004 through June 30, 2007, Plaintiff submitted to Transactis a total of seventy-five bi-weekly invoices (the "Invoices").

### B. Negotiations Regarding the Exercise of Stock Options and the Representation of Transactis' Fair Market Value.

19.     As of June 30, 2007, based on the number of hours worked by Plaintiff as reflected in the Invoices, Plaintiff had earned $205,950.00 in fully-vested common stock of Transactis for services performed under the 2004 Agreement and 2005 Agreement (the "Earned Equity").

20.     Because neither the 2004 Agreement nor the 2005 Agreement specified the price at which Plaintiff would be allowed to purchase the Earned Equity, Plaintiff and Transactis began discussions in or around June 2007 regarding the terms of the Earned Equity.

21.     In or about August 2007, Joseph Proto ("Proto") became the new Chief Executive Officer of Transactis.  Upon information and belief, Kohn continued on as an executive officer of Transactis. Proto and Kohn then continued to discuss the terms of Plaintiff's Earned Equity on behalf of Transactis.

22.     From June 2007 to April 2008, Plaintiff and Transactis had numerous discussions and negotiations regarding the terms of the Earned Equity.  During the course of these negotiations, Proto communicated that the issuance of the Earned Equity to Plaintiff would result in substantial taxes owed by Plaintiff to the IRS, and that, in order to avoid incurring such taxes, Plaintiff should accept stock options, rather than shares of common stock of Transactis. During the course of these negotiations, Plaintiff, who is not a sophisticated investor and was not represented by counsel, acquiesced to receive fully-vested stock options at the then-fair market value of Transactis' common stock as represented by Transactis.

23.     During the course of these negotiations, Kohn, Proto and Plaintiff discussed a number of matters, including (i) the determination of the fair market value of Transactis' common stock as of various dates, (ii) the calculation of the number of stock options to be issued to Plaintiff, and (iii) the exercise prices to be assigned to such stock options by Transactis.

24.     During the course of these negotiations, Transactis represented that the then-fair market value of Transactis' common stock applicable to all employees and consultants was $0.56 per share before March 12, 2007 and $0.395 per share on or after March 12, 2007.

25. On September 3, 2007, Kohn sent an email to Plaintiff, which included information on the number of stock options earned by Plaintiff as of various dates. Kohn wrote, in pertinent part: "If you do not have an easy-to-retrieve spreadsheet I'll ask Louann for one. Again, below is only for options earned up to the new agreement, which I sent you in mid-July -- some of which were earned at $0.56 and some at $0.395."

26. On September 21, 2007, Proto sent another email to Plaintiff (cc'ing Kohn), which included the following: "Because we have differences in our number of options, I will have Tom send you the spreadsheet showing our calculations. Could you compare our records with yours and help us clear up the differences? This way we can put the correct amounts of options into the letters - I know both of us want to be accurate!".

27. On September 21, 2007, Kohn sent an Excel spreadsheet to Plaintiff listing the exercise prices associated with each of the Invoices, and number of stock options earned by Plaintiff based on such exercise prices. Kohn wrote "Philip -- here is the spreadsheet we have on file for the options you've earned." In this spreadsheet, Kohn assigned an exercise price of $0.56 per share for Invoices dated from July 2004 to March 11, 2007, and an exercise price of $0.395 per share for Invoices dated from March 12, 2007 to June 30, 2007.

28. In referring to this Excel spreadsheet, Kohn represented that the fair market value and exercise price changed on or around March 12, 2007 as a result of a financing from a third-party investor that Transactis had apparently closed around that date.

29. On another email, also on September 21, 2007, Kohn wrote (cc'ing Proto and Louann Alexander Webber, a Transactis employee): "We're a lot closer now, thanks. I've inserted "0.395" for columns 73-80. (I'll ask Louann to re-add to find the $2,000 difference in dollars.) My spreadsheet still says that I think I owe you MORE options at $0.56 than you think

we owe you -- 257,104 (our number) shares to 251,805 (your number). We're MUCH closer on options at $0.395 now but we're still off by a bit: 156,076 (our number) to 164, 937 (your number). The difference may be found in cells J73-75 where I started options at $0.395 on March 12th (when we got our first check at this amount.. this is the day we needed to use for all employees/consultants). See if maybe this was our fork in the calculation road for both the difference in the $0.56 and $0.395 calculations? Thanks. Sorry to take you away from coding!"

30.     Kohn reiterated this calculation of the exercise prices in follow-up discussions on November 5, 2007, noting "with new calcs: 156,076 at $0.39 260,140 at $0.56."

31.     After an inquiry from Kovilakath, on November 6, 2007, Kohn further represented that with these exercise prices, Kovilakath would "have approximately 3.47% of the company."

32.     Ultimately, Kohn determined that (i) $141,000 of the Earned Equity would be granted to Plaintiff in the form of stock options of Transactis at an exercise price of $0.56 per share of common stock, resulting in options to purchase 251,786 shares of Transactis' common stock ($141,000/$0.56 = 251,786), and (ii) $64,950 of the Earned Equity would be granted to Plaintiff in the form of stock options of Transactis at an exercise price of $0.395, resulting in options to purchase 164,430 shares of Transactis' common stock ($64,950/$0.395 = 164,430), resulting in options to purchase an aggregate 416,216 shares of Transactis' common stock (the "Stock Options").

33.     In or about March 2008, Kovilakath communicated to Proto his intent to terminate Plaintiff's consulting agreement with Transactis. Proto and Kovilakath agreed that Plaintiff would continue to provide services for a few more months until certain deliverables had been completed, subject to a termination date no later than October 2008.

34. On March 26, 2008, Proto sent Plaintiff an updated Excel spreadsheet still reflecting Kohn's prior statement of the exercise prices for Plaintiff's stock options of $0.56 prior to March 12, 2007 and $0.395 thereafter, noting that "we agreed the share totals are correct in the spreadsheet, so I think we can put this document behind us."

35. Between March 26, 2008 and April 15, 2008, in order to apply only one exercise price to all the Stock Options, Transactis and Plaintiff agreed to apply a blended exercise price of $0.45 per share to all Stock Options based on the exercise prices of $0.56 and $0.395 that had been determined by Transactis for purpose of calculating the Stock Options.

36. Transactis and Plaintiff also agreed that the Stock Options would be exercisable during a 10-year period regardless of Plaintiff's employment status with Transactis.

37. Having negotiated these terms, on April 15, 2008, Transactis and Plaintiff entered into a letter agreement (the "2008 Agreement"), by which Transactis agreed to issue Plaintiff the Stock Options with the blended exercise price in full satisfaction for the Earned Equity. The 2008 Agreement is attached hereto as Exhibit A.

38. The 2008 Agreement allowed Plaintiff to exercise the Stock Options during a 10-year term ending on April 14, 2018. Paragraph 2 of the 2008 Agreement provides, in pertinent part, the following: "Notwithstanding any changes or amendments to the terms and conditions of the Plan and the Grant Notice, these options will carry a maximum 10-year exercise period commencing as of the execution date of this letter."

39. On April 15, 2008, Transactis issued the Stock Options to Plaintiff pursuant to the Stock Option Grant Notice (the "Grant Notice"). The Grant Notice provides that "[t]his Option is subject to all of terms and conditions as set forth herein and in the Stock Option

Agreement, the Plan and the Notice of Exercise." Pursuant to the Grant Notice, the expiration date of the stock options was April 14, 2018. The Grant Notice is attached hereto as Exhibit B.

40.     The Stock Option Agreement sent to Plaintiff by Transactis is attached hereto as Exhibit C.

41.     The Stock Incentive Plan sent to Plaintiff by Transactis is attached hereto as Exhibit D.

42.     The Notice of Exercise sent to Plaintiff by Transactis is attached hereto as Exhibit E.

43.     On April 15, 2008, Transactis and Plaintiff also agreed to terminate the 2005 Agreement, and entered into a new Consulting Agreement, dated as of July 1, 2007 (the "2007 Agreement"). Per the terms of the 2007 Agreement, Transactis agreed to pay Kovilakath certain compensation, including the issuance of (i) certain stock options with an exercise price of $0.395 per share of common stock and a vesting date of July 1, 2008, and (ii) certain stock options with a vesting date of July 1, 2009, and an exercise price to be determined by the Board of Transactis based on Transactis' fair market value as of July 1, 2008.

44.     The 2007 Agreement was voluntarily terminated by Plaintiff on October 20, 2008. Beginning on this date, Plaintiff no longer provided any services to Transactis and did not have any other communications with Transactis regarding the Stock Options until March 2018 for purposes of exercising Plaintiff's Stock Options.

### C.  MarketShare's Exercise of Its Stock Options and Transactis' Denial.

45.     In March 2018, Plaintiff contacted Transactis by email inquiring about the Stock Options.

46.     On March 19, 2018, Mr. Jim Fornari ("Fornari"), Chief Legal Officer of Transactis, replied to Plaintiff by email acknowledging that Plaintiff owned 11,891 stock options with an exercise price of $17.43 per share of common stock.  Fornari also wrote that Transactis had closed: (i) a Series A financing round at $3.98 per share of Series A preferred stock; (ii) a Series B financing round, in November 2010, at $3.35 per share of Series B preferred stock; (iii) a Series C financing round, in November 2012, at $4.06 per share of Series C preferred stock; (iv) a Series D financing round, in August 2014, at $3.00 per share of Series D preferred stock; and (v) a Series E financing round, in April 2016, at $6.68 per share of Series E preferred stock. Fornari also stated that, in April 2016, Transactis offered to repurchase shares of common stock from stockholders at $2.00 per share.

47.     Because the information provided by Fornari was different from the number and exercise price set forth in the Grant Notice,  Plaintiff's counsel requested that Fornari provide an explanation for Transactis' calculation of the number and exercise price of Plaintiff's Stock Options.

48.     On March 21, 2018, Fornari replied that, on August 24, 2010, Transactis had merged with a third party and had undergone a 35-to-1 reverse stock split (the "Merger and Reverse Stock Split") such that the Stock Options had been reduced from 416,216 to 11,891 (416,216 / 35 = 11,891), and the exercise price had been increased to $17.43 ($0.498 x 35 = $17.43).

49.     Plaintiff was surprised that the Stock Options had undergone such changes since Plaintiff was not aware of the Merger and Reverse Stock Split, and Transactis had not communicated to Plaintiff that the terms of the Stock Options had been amended in any manner.

Plaintiff also did not understand why the original exercise price of $0.45 set out in the Grant Notice had increased to $0.498, as stated by Fornari.

50.    In order for Plaintiff to understand the effect of the Merger and Reverse Stock Split on Plaintiff's Stock Options, on March 22, 2018, Plaintiff's counsel requested that Transactis provide all documents related to the Merger and Reverse Stock Split.  Fornari refused to provide Plaintiff any such documentation.

51.    On March 31, 2018, Plaintiff wrote Fornari the following: "For evidentiary purposes, I want the company to know that I'm ready to exercise all my 416,216 options at the original exercise price of $0.49, especially in light that, as you stated, the company closed its Series E financing round in April 2016 at a price of $6.68.  On the other hand, at the new exercise price of $17.43, my options are clearly out of the money and so would not make economic sense to exercise my options."

52.    In April 2018, not knowing whether the exercise price related to the Stock Options was: (i) $0.45 (as reflected in the Grant Notice); (ii) $0.498, as confirmed by Fornari in March 2018; or (iii) $17.43, as confirmed by Fornari in March 2018 due to the Merger and Reverse Stock Split, Plaintiff chose to exercise the Stock Options by delivery of vested options, as permitted by the Grant Notice.

53.    Pursuant to the Grant Notice, Plaintiff was allowed to exercise the Stock Options "[b]y delivery of vested options held pursuant to this Grant Notice, at the fair market value of the underlying shares at the time of exercise."

54.    Section 5 of the Stock Option Agreement provides the following: "Payment of the exercise price is due in full upon exercise of all or any part of your option.  You

may elect to make payment of the exercise price in cash or by check or in any other manner permitted by your Grant Notice…."

55.     Section 9(a) of the Stock Option Agreement provides the following:  "You may exercise the vested portion of your option (and the unvested portion of your option if your Grant Notice so permits) during its term by delivering a Notice of Exercise (in a form designated by the Company) together with the exercise price to the Secretary of the Company, or to such other person as the Company may designate, during regular business hours, together with such additional documents as the Company may then require."

56.     On April 10, 2018, pursuant to Section 9(a) of the Stock Option Agreement, Plaintiff exercised the Stock Options by delivering to Transactis the Notice of Exercise (the "First Notice of Exercise").

57.     On April 12, 2018, Fornari, on behalf of Transactis, sent a letter to Plaintiff stating that the Stock Options were not timely exercised and had previously terminated. Fornari also stated that the First Notice of Exercise had a number of errors and was improperly executed by Plaintiff.

58.     On April 13, 2018, Plaintiff sent Transactis a revised Notice of Exercise (the "Second Notice of Exercise"). A copy of this Second Notice of Exercise is attached hereto as Exhibit F.

59.     On April 13, 2018, Fornari, on behalf of Transactis, sent Plaintiff's counsel an email acknowledging receipt of the April 13th letter, and continued to assert that the Stock Options had terminated pursuant to the terms of the Stock Incentive Plan.

60.     On May 18, 2018, Plaintiff's counsel sent a letter to Fornari asserting, among other things, that the Stock Options had been timely exercised.

61.     In June 2018, Fornari agreed to send Plaintiff's counsel certain documentation related to the Merger and Reverse Stock Split in order to confirm that Plaintiff was not unfairly treated.  As part of this information, Fornari sent Plaintiff's counsel a pre-existing (and undoubtedly discoverable) capitalization table, dated as of December 10, 2010, related to the closing of Transactis' Series B financing, and showing the name of all holders of stock options, number of stock options for each holder, and exercise price for each holder (the "Capitalization Table").  The Capitalization Table showed that, as of December 2010, Plaintiff owned 11,891 stock options at an exercise price of $0.498.

62.     On November 15, 2018, Plaintiff's counsel sent an email to Fornari asking for, among other things, an explanation of why other employees, consultants, advisors and members of the Board of Directors had received stock options with an exercise price of $0.06 at various times from January 2009 to September 2010, which exercise price was significantly lower than the exercise price of $0.395 that had been represented by Transactis to be the fair market value as of June 2008.

**D.  MarketShare's Discovery of Misrepresentation, Fraud, and Inequitable Conduct**.

63.     On January 28, 2019, Fornari provided Plaintiff's counsel with a pre-existing (and undoubtedly discoverable) document purporting to be a valuation of $0.06 per share of common stock determined by Transactis immediately following the closing of the Merger and Reverse Stock Split.  Upon information and belief, the Merger and Reverse Stock Split took place in August 2010.  Upon information and belief, Transactis issued stock options to the Other Grantees from January 2009 to September 2010.  As such, the valuation provided by Fornari did not cover the time period when Transactis issued stock options to the Other Grantees.

64. Fornari also provided Plaintiff's counsel the following third-party valuations of Transactis's common stock: (i) $1.35 per share, as of November 5, 2012; (ii) $0.37 per share, as of August 11, 2014; and (iii) $0.72 per share, as of April 12, 2016. Upon information and belief, these valuations were obtained by Transactis at various times for the purpose of complying with IRC §409A.

65. This was the first time that Transactis purported to provide Plaintiff an explanation for the valuation of the common stock at $0.06 per share listed in the Capitalization Table, and the first time that Plaintiff received information that led it to believe that Transactis had fraudulently misrepresented the fair market value and exercise price of Plaintiff's Stock Options.

66. Upon information and belief and based on the information set forth in the Capitalization Table, between January 2009 and September 2010, Transactis issued approximately twenty-nine (29) million stock options to the Other Grantees, each with a fair market value and exercise price of $0.06 per share of common stock, which was not determined in good faith by Transactis as of the relevant dates of issuance, and served to grant an economic benefit to the Other Grantees at the expense of Plaintiff.

67. Section 1(o) of the Stock Incentive Plan defines "Fair Market Value" as follows:

"Fair Market Value" means, as of any date, the value of the Common Stock determined as follows:

(i)     If the Common Stock is listed on any established stock exchange or traded on the Nasdaq National Market or the Nasdaq SmallCap Market, the Fair Market Value of a share of Common Stock shall be the closing sales price for such stock (or the closing bid, if no sales were reported) as quoted on such exchange or market (or the exchange or market with the greatest volume of trading in the Common Stock) on the last market trading day prior to the day of determination, as reported in The Wall

Street Journal or such other source as the Board deems reliable.

(ii)     In the absence of such markets for the Common Stock, the Fair Market
         Value shall be determined in good faith by the Board.

68.     Section 5(b) of the Stock Incentive Plan provides the following: "A Ten Percent Shareholder shall not be granted an Incentive Stock Option unless the Exercise Price of such Option is at least one hundred ten percent (110%) of the Fair Market Value of the Common Stock at the date of grant and the Option is not exercisable after the expiration of five (5) years from the date of grant."

69.     Section 6(b) of the Stock Incentive Plan provides the following: "Subject to the provisions of subsection 5(b) regarding Ten Percent Shareholders, the exercise price of each Incentive Stock Option shall be not less than one hundred percent (100%) of the Fair Market Value of the Common Stock subject to the Option on the date the Option is granted."

70.     Section 6(c) of the Stock Incentive Plan provides the following: "The exercise price of each Nonstatutory Stock Option shall be not less than eighty-five percent (85%) of the Fair Market Value of the Common Stock subject to the Option on the date the Option is granted."

71.     Upon information and belief, Transactis' issuance of a large number of stock options to the Other Grantees with a fair market value and exercise price of $0.06 per share of common stock, after having represented to Plaintiff a fair market value and exercise price of $0.56 and $0.395 per share of common stock, meant that: (i) the representations made by Transactis regarding its fair market values as of July 2004 to June 2007 were incorrect, fraudulently misrepresented, not determined by the Board of Transactis in good faith, and not properly reflective of the fair market value per share of common stock as of such dates in violation of Sections 1, 5 and 6 of the Stock Incentive Plan; and/or (ii) the fair market value of

$0.06 per share determined by Transactis in connection with the stock options it issued to Other Grantees from January 2009 to September 2010 were incorrect, not determined in good faith by the Board of Transactis and not properly reflective of the fair market value per share of common stock as of such dates in violation of Sections 1, 5 and 6 of the Stock Incentive Plan.

72.     Upon information and belief, the issuance of the Stock Options with an fair market value and exercise price of $0.45 per share of common stock, which was higher than the fair market value and exercise price included in stock options issued to the Other Grantees from January 2009 to September 2010, resulted in the issuance to Plaintiff of Stock Options that were incorrect both in number and exercise price, and resulted in a reduction of the economic value of the Stock Options.

73.     Upon information and belief, immediately after the Merger and Reverse Stock Split, the exercise price per share assigned by Transactis to the stock options it issued to the Other Grantees increased from $0.06 to $2.10 ($0.06 x 35 = $2.10), and the exercise price per share assigned by Transactis to Plaintiff's Stock Options increased from $0.45 to $15.75 ($0.45 x 35 = $15.75).  As a result, upon information and belief, Plaintiff, upon exercise of its Stock Options, was required to pay a much greater exercise price per share than the exercise price per share the Other Grantees were required to pay Transactis upon the exercise of their respective stock options.

74.     Upon information and belief and based on the information set forth in the Capitalization Table, Transactis' grant of stock options to the Other Grantees at the significantly lower the exercise price of $0.06 per share served to benefit all of the Other Grantees at the expense of only Plaintiff and one other consultant of Transactis who, like Plaintiff, left Transactis in 2008 and held stock options with exercise prices of $0.56 and $0.395.

75. Transactis did not provide Plaintiff's counsel any valuation compliant with IRC §409A for any time period from 2004 – 2011, or 2017 – 2018. More specifically, Fornari did not provide any valuation compliant with IRC §409A for the following time periods: (i) as of April 15, 2008, when Transactis issued the Stock Options to Plaintiff; (ii) as of January 2009, when Transactis began to issue stock options to the Other Grantees with an exercise price of $0.06; and (iii) as of April 15, 2018, when Plaintiff exercised the Stock Options.

76. Plaintiff's counsel had various correspondence with Transactis' counsel through September 2019. Despite repeated requests during this correspondence, Plaintiff has not received any information from Transactis confirming that, after the Merger and Reverse Stock Split, the stock options granted to Other Grantees were treated in the same manner as Plaintiff's Stock Options.

77. Upon information and belief, in or about May 2019, Mastercard acquired all of the capital stock of Transactis at a price of $14.90 per share of common stock.

78. On July 11, 2019, Plaintiff's counsel wrote to Fornari that it had yet to receive any information or valuation related to the Stock Options and stock options granted to the Other Grantees.

79. On September 24, 2019, Mr. Christopher Karagheuzoff ("Karagheuzoff"), Mastercard's outside counsel, sent Plaintiff's counsel a letter stating that the Stock Options were out-of-the-money at the time of exercise, and that the Stock Options had no value. Karagheuzoff did not provide any of the additional information requested by Plaintiff's counsel. Karagheuzoff referred to a new exercise price of $15.75 per Stock Option, which was different from the $17.43 exercise price provided by Fornari.

## COUNT I AS AGAINST TRANSACTIS
### BREACH OF CONTRACT
**(2008 Agreement, Grant Notice and Stock Option Agreement)**

80.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.

81.     The 2008 Agreement, the Grant Notice and the Stock Option Agreement, constitute valid and enforceable contracts between Plaintiff and Transactis.

82.     Plaintiff exercised the Stock Options by delivery of vested options held pursuant to the Grant Notice, at the fair market value of the underlying shares at the time of exercise.

83.     Plaintiff fulfilled and honored its obligations under each of the 2008 Agreement, the Grant Notice and the Stock Option Agreement by, *inter alia*, properly exercising its Stock Options on a timely basis.

84.     Plaintiff was entitled to receive from Transactis shares of common stock based on the fair market value of the vested Stock Options at the time of exercise, which Transactis refused to do.

85.     Transactis breached the 2008 Agreement, the Grant Notice and Sections 5 and 9 of the Stock Option Agreement by failing to issue to Plaintiff shares of common stock based on the fair market value of the vested Stock Options after having received payment pursuant to the Second Notice of Exercise.

86.     As a result of Transactis' breach, Plaintiff has suffered economic damages in an amount to be proven at trial.

## COUNT II AS AGAINST TRANSACTIS
## FRAUDULENT MISREPRESENTATION / COMMON LAW FRAUD

87.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.

88.     Transactis represented to Plaintiff that its fair market value prior to March 12, 2007 was $0.56 per share of common stock.

89.     Transactis represented to Plaintiff that its fair market value on or after March 12, 2007 was $0.395 per share of common stock.

90.     On September 21, 2007, Kohn, on behalf of Transactis, represented to Plaintiff that, in pertinent part, beginning on March 12, 2007, the exercise price for stock options applicable to all employees and consultants was (i) $0.56 prior to March 12, 2007, and (ii) $0.395, on or after March 12, 2007.

91.     Specifically, on September 21, 2007, Kohn wrote:  "We're a lot closer now, thanks.  I've inserted "0.395" for columns 73-80…The difference may be found in cells J73-75 where I started options at $0.395 on March 12th (when we got our first check at this amount.. this is the day we needed to use for all employees/consultants)…."

92.     Kohn reiterated this calculation of the exercise prices in follow-up discussions on November 5, 2007, noting "with new calcs: 156,076 at $0.39  260,140 at $0.56."

93.     Transactis further reiterated this representation in an email Proto sent Plaintiff on March 26, 2008, which included an updated Excel spreadsheet still reflecting Kohn's prior statement of the exercise prices for Plaintiff's stock options of $0.56 prior to March 12, 2007 and $0.395 thereafter, noting that "we agreed the share totals are correct in the spreadsheet, so I think we can put this document behind us."

94.     The fair market value of Transactis applicable to all employees and consultants was a fact material to the negotiation of the 2008 Agreement, Grant Notice and Stock Option Agreement, and Transactis' representations were intended as an inducement for Plaintiff to enter into those agreements.  As a result of Transactis' representations, Plaintiff agreed in the 2008 Agreement to a blended exercise price of $0.45 applicable to the Stock Options, which was then reflected in the Grant Notice issued by Transactis.

95.     Upon information and belief: (i) Transactis' representation of the fair market value of the Stock Options was knowingly false and misleading, and the fair market value and exercise price of the Stock Options was not determined in good faith by Transactis, was not properly reflective of the fair market value of the common stock of Transactis in violation of Sections 1, 5 and 6 of the Stock Incentive Plan, and resulted in the issuance of a lower number of Stock Options to Plaintiff in April 2008 as compared to the number of Stock Options Plaintiff would have received had Transactis applied the lower exercise price of $0.06 per share given to the Other Grantees; and/or (ii) the fair market value and exercise price of $0.06 per share of common stock included in the stock options issued to the Other Grantees was not determined in good faith by the Board, was not properly reflective of the fair market value of the common stock in violation of Sections 1, 5 and 6 of the Stock Incentive Plan, and improperly served to create an economic advantage for the stock options granted to the Other Grantees at the expense of Plaintiff.

96.     Plaintiff had no reasonable means to independently verify Transactis' representations regarding the fair market value of the Stock Options, which Transactis would have known, and reasonably relied on Transactis' representations.

97.     Transactis thereafter improperly concealed from Plaintiff the fact that it issued a large number of stock options to the Other Grantees with a significantly lower exercise price of $0.06 per share of common stock until after Plaintiff timely exercised its Stock Options in April 2018, and Defendants have to date not provided a basis for such lower exercise price.

98.     As a result, Transactis misrepresented the fair market value per share of common stock that should have applied to the Stock Options and is not otherwise recoverable as contract damages, thereby decreasing the value of Plaintiff's Stock Options upon its exercise thereof in an amount to be proven at trial.

## COUNT III AS AGAINST TRANSACTIS
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

99.     Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.

100.    Plaintiff and Transactis entered in the 2008 Agreement, the Grant Notice and the Stock Option Agreement as a way to compensate Plaintiff for work previously performed by Plaintiff under the 2004 Agreement and 2005 Agreement.

101.    Plaintiff agreed to the exercise prices of $0.56 and $0.395 per share, as well as the blended exercise price of $0.45 per share, in reliance upon Transactis' representations that such a price reflected a blended value of Transactis' fair market value per share of common stock applicable to all employees and consultants for the time period from July 2004 to June 2007.

102.    Upon information and belief, the exercise prices of $0.56 and $0.395 were determined in bad faith by the Board, were not properly reflective of the fair market value of the common stock as of relevant dates of issuance of Plaintiff's Stock Options in violation of Sections 1, 5 and 6 of the Stock Incentive Plan, and resulted in the issuance of a lower number of

Stock Options to Plaintiff in April 2008 as compared to the number of Stock Options Plaintiff would have received had Transactis applied an exercise price of $0.06 per share.

103. Upon information and belief, beginning in January 2009 Transactis issued a large number of stock options to the Other Grantees with a significantly lower exercise price of $0.06 per share of common stock, which served to to devalue the Stock Options and improperly benefit economically all of the Other Grantees at the expense of Plaintiff.

104. Upon information and belief, such exercise price of $0.06 per share was determined in bad faith by the Board and was not properly reflective of the fair market value of the common stock in violation of Sections 1, 5 and 6 of the Stock Incentive Plan.

105. Upon information and belief, this issuance was a bad faith attempt to injure Plaintiff's right to receive the benefit of the 2008 Agreement, the Grant Notice and the Stock Option Agreement upon exercise of its Stock Options.

106. Transactis thereafter concealed from Plaintiff the fact that it issued a large number of stock options to the Other Grantees with a significantly lower exercise price of $0.06 per share until after Plaintiff timely exercised its Stock Options in April 2018, and Defendants have to date not provided a basis for such lower exercise price.

107. As a result, Plaintiff is entitled to economic damages in an amount to be proven at trial.

### COUNT IV AS AGAINST TRANSACTIS AND MASTERCARD DECLARATORY JUDGMENT

108. Plaintiff agreed to a blended exercise price of $0.45 for the Stock Options based on reasonable reliance on Transactis' representation that it reflected the fair market value per share of common stock applicable to all employees and consultants of Transactis.

109.    Upon information and belief, Transactis soon thereafter set a significantly lower exercise price of $0.06 per share of common stock for stock options issued to the Other Grantees, which served to improperly devalue Plaintiff's Stock Options and thereby devalue Plaintiff's compensation it earned for work performed under the 2004 Agreement and 2005 Agreement.

110.    Transactis thereafter concealed from Plaintiff the fact that it issued a large number of stock options to the Other Grantees with a significantly lower exercise price of $0.06 per share of common stock until after Plaintiff timely exercised its Stock Options, and have to date not provided a basis for such lower exercise price.

111.    When Plaintiff timely exercised its Stock Options, it was informed by Defendant Mastercard's outside counsel that the Stock Options were out-of-the-money due to the effect the Merger and Reverse Stock Split had on the exercise price of the Stock Options.

112.    According, a justiciable controversy exists between the parties with regard to whether the $0.45 exercise price for the Stock Options and the $0.06 exercise price for the stock options issued to the Other Grantees were properly calculated by Transactis as fair market value.

113.    Plaintiff seeks a declaration that: (i) the proper valuation of the exercise price of the Stock Options in the 2008 Agreement should have reflected a lower exercise price of $0.06 per share of common stock as reflected in the subsequent issuance of stock options to the Other Grantees, or, alternatively, that the proper valuation of the exercise price of the stock options issued to the Other Grantees was $0.395 as represented by Transactis to Plaintiff in April 2008; and (ii) it is entitled to payment of shares of Transactis' common stock that Plaintiff legally owns pursuant to its proper and timely exercise of the Stock Options.

### COUNT V AS AGAINST MASTERCARD
### UNJUST ENRICHMENT

114.    Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein.

115.    Mastercard has been unjustly enriched by having acquired all capital stock of Transactis without having made any payment to Plaintiff for common stock of Transactis that Plaintiff legally owns pursuant to its proper and timely exercise of the Stock Options.

116.    Mastercard has voluntarily received the benefits of owning all of Transactis' capital stock, including capital stock that should have been issued to Plaintiff in April 2018 after properly and timely exercising the Stock Options.

117.    Under principles of equity and good conscience, Mastercard should not be permitted to retain the benefit of owning all of the capital stock of Transactis without paying Plaintiff for the shares of common stock of Transactis that it legally owns.

118.    As a result of Mastercard's inequitable conduct, Plaintiff has suffered economic damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that a judgment and order be issued providing the following relief:

A.   Awarding Plaintiff compensatory damages incurred as a result of Defendants' conduct in an amount to be determined at trial but not less than $75,000.00, together with pre-judgment interest at the maximum rate allowable by law;

B.   Awarding interest fees and reasonable costs and expenses incurred in this action; and

C.   Awarding such other relief as the Court deems just and proper.

Dated:   January 27, 2021

FRIGON MAHER & STERN LLP

By: _____

     Alejandro Maher (amaher@fmstern.com)

Alejandro Maher
Justin S. Stern

845 Third Ave.
Suite 600
New York, New York 10022
(212) 845-9809

*Attorneys for Plaintiff*
*MarketShare Corp.*