# Exhibit C

# Delaware

PAGE 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE RESTATED CERTIFICATE OF "TRANSACTIS, INC.", FILED IN THIS OFFICE ON THE TWENTY-EIGHTH DAY OF JANUARY, A.D. 2009, AT 2:04 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

3448387  8100

090077918

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 7105069

DATE: 01-28-09

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 02:13 PM 01/28/2009*
*FILED 02:04 PM 01/28/2009*
*SRV 090077918 - 3448387 FILE*

# FIFTH AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

# OF

# TRANSACTIS, INC.

Transactis, Inc. (the *"Corporation"*), a corporation duly organized and existing under the General Corporation Law of the State of Delaware (the *"DGCL"*) does, by Joseph Proto, its duly authorized Chief Executive Officer, hereby certify that:

1. The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on October 22, 2001. An Amended and Restated Certificate of Incorporation was filed on January 30, 2002. A Second Amended and Restated Certificate of Incorporation was filed on July 3, 2003. A Third Amended and Restated Certificate of Incorporation was filed on March 26, 2007. An Amendment to the Third Amended and Restated Certificate of Incorporation was filed on March 19, 2008. A Fourth Amended ad Restated certificate of Incorporation was filed on October 30, 2008.

2. Pursuant to Sections 141, 242 and 245 of the DGCL, by written consent in lieu of a Special Meeting of the Board of Directors of the Corporation dated as of January 27, 2009, the Board of Directors of the Corporation has deemed it advisable and in the best interest of the Corporation to amend and restate the Fourth Amended and Restated Certificate of Incorporation of the Corporation in its entirety as set forth in this Fifth Amended and Restated Certificate of Incorporation, and has directed that this Fifth Amended and Restated Certificate of Incorporation be submitted for consideration and action thereon by the stockholders of the Corporation.

3. The text of the Fifth Amended and Restated Certificate of Incorporation set forth in Section 4 hereof was duly adopted by the Board of Directors and by the written consent of the holders of a majority of the outstanding shares of capital stock of the Corporation entitled to vote thereon in accordance with the provisions of Sections 141, 228, 242 and 245 of the DGCL.

4. The text of the Certificate of Incorporation of the Corporation is hereby amended and restated in its entirety by this Fifth Amended and Restated Certificate of Incorporation, to read as follows:

\* \* \* \* \*

## ARTICLE I

NAME

The name of the corporation (hereinafter referred to as the *"Corporation"*) is:

Transactis, Inc.

## ARTICLE II

### REGISTERED OFFICE AND AGENT

The address of the Corporation's registered office in the State of Delaware is 113 Barksdale Professional Center, City of Newark, County of New Castle, State of Delaware, 19711. The name of the Corporation's registered agent at such address is Delaware Intercorp, Inc.

## ARTICLE III

### PURPOSE

The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware (*"DGCL"*) and to possess and exercise all of the powers and privileges granted under such law and the other laws of the State of Delaware.

## ARTICLE IV

### AUTHORIZED STOCK

The total number of shares of all classes of stock that the Corporation shall have authority to issue is Ninety Five Million Five Hundred Eighty Five Thousand (95,585,000) shares of capital stock, consisting of Fifty Five Million (55,000,000) shares of common stock, par value $.01 per share ("Common Stock") and Forty Million Five Hundred Eighty Five Thousand (40,585,000) shares of preferred stock, par value $0.01 per share ("Preferred Stock"). The first series of Preferred Stock shall be designated "**Series A Preferred Stock**" and shall consist of Eighty Five Thousand (85,000) shares. The second series of Preferred Stock shall be designated "**Series A-1 Preferred Stock**" and shall consist of Two Hundred Fifty Thousand (250,000) shares. The third series of Preferred Stock shall be designated "**Series B Preferred Stock**" and shall consist of Two Million Five Hundred Thousand (2,500,000) shares. The fourth series of Preferred Stock shall be designated "**Series C Preferred Stock**" and shall consist of Twenty Million (20,000,000) shares. The fifth series of Preferred Stock shall be designated "**Series C-1 Preferred Stock**" and shall consist of Seventeen Million Seven Hundred Fifty Thousand (17,750,000) shares. Collectively, the Series A Preferred Stock, Series A-1 Preferred Stock, Series B Preferred Stock, Series C Preferred Stock, and Series C-1 Preferred Stock are referred to as the "**Series Preferred**."

The undesignated Preferred Stock may be issued from time to time in one or more series. The Board of Directors is authorized to determine the designation of any series, to fix the number of shares of any series of the undesignated Preferred Stock, and to determine or alter the rights, preferences, privileges, and restrictions granted to or imposed upon any wholly unissued series of undesignated Preferred Stock, and, within the limits and restrictions stated in any resolution or resolutions of the Board of Directors originally fixing the number of shares constituting any series of the undesignated Preferred Stock, to increase or decrease (but not below the number of shares of any such Series then outstanding) the number of shares of any such Series subsequent to the issue of shares of that series. In case the number of shares of any Series shall be so decreased, the shares constituting such decrease shall resume the status which they had prior to the adoption of the resolution originally fixing the number of shares of such series.

## ARTICLE V

### COMMON AND PREFERRED STOCK

The terms and provisions of the Common Stock, the Series A Preferred Stock, the Series A-1 Preferred Stock, the Series B Preferred Stock, the Series C Preferred Stock and the Series C-1 Preferred Stock are as follows:

    A.    <u>Definitions</u>. For purposes of this ARTICLE V, the following definitions shall apply:

    (i)    **"Conversion Price"** shall mean $0.75 per share for the Series A Preferred Stock, shall mean $0.56 for the Series A-1 Preferred Stock, shall mean $0.395 for the Series B Preferred Stock, shall mean $0.15 for the Series C Preferred Stock, and shall mean $0.17 for the Series C-1 Preferred Stock (subject in each case to adjustment from time to time for Recapitalizations and as otherwise set forth elsewhere herein).

    (ii)    **"Convertible Securities"** shall mean any evidences of indebtedness, shares or other securities convertible into or exchangeable for Common Stock.

    (iii)    **"Corporation"** shall mean Transactis, Inc.

    (iv)    **"Excluded Securities"** means (i) Securities issued by the Corporation in an underwritten public offering pursuant to an effective registration statement filed under the Securities Act, (ii) Securities issued in consideration of the acquisition of another entity or business by the Corporation by merger, consolidation, amalgamation, exchange of shares, the purchase of substantially all of the assets or otherwise; (iii) shares of Common Stock or Convertible Securities issued to employees, officers or directors of, or consultants or advisors to the Company or any subsidiary pursuant to stock purchase or stock option plans or other arrangements that are approved by the Board (each, an *"Approved Management Incentive Plan"*), (iv) Securities issued by the Corporation upon the conversion of shares of Series Preferred; (v) Securities issued in connection with strategic transactions, equipment lease financings or bank credit arrangements approved by the Board, *provided* that, in the good faith judgment of the Board, such transactions are being entered into primarily for non-equity financing purposes; and (vi) Securities issuable upon conversion or exercise of any Convertible Securities outstanding as of the date hereof.

    (v)    **"Fully Diluted Shares Outstanding"** means, at any time of measurement thereof, the number of shares of Common Stock actually outstanding at such time, plus the number of shares of Common Stock issuable upon conversion of the Series Preferred (as equitably adjusted to reflect any stock split, stock dividend, combination, reorganization, recapitalization, reclassification or other similar event involving Common Stock), plus (without duplication) the number of shares of Common Stock issuable upon the exercise in full of all other outstanding Convertible Securities whether or not such Convertible Securities are vested.

    (vi)    **"Options"** shall mean rights, options or warrants to subscribe for, purchase or otherwise acquire Common Stock or Convertible Securities.

    (vii)    **"Original Issue Date"** shall for the Series A Preferred Stock mean the

date upon which the Corporation issued the first share of Series A Preferred Stock; shall for the Series A-1 Preferred Stock mean the date upon which the Corporation issued the first share of Series A-1 Preferred Stock; shall for the Series B Preferred Stock mean the date upon which the Corporation issued the first share of Series B Preferred Stock, shall for the Series C Preferred Stock mean the date upon which the Corporation issued the first share of Series C Preferred Stock and shall for the Series C-1 Preferred Stock mean the date upon which the Corporation issued the first share of Series C-1 Preferred Stock.

(viii)     **"Original Issue Price"** shall mean $0.75 per share for the Series A Preferred Stock, shall mean $0.56 for the Series A-1 Preferred Stock, shall mean $0.395 for the Series B Preferred Stock, shall mean $0.15 for the Series C Preferred Stock, and shall mean $0.17 for the Series C-1 Preferred Stock (subject in each case to adjustment from time to time for Recapitalizations as set forth elsewhere herein).

(ix)     **"Preferred Stock"** shall mean the preferred stock of the Corporation.

(x)     **"Recapitalization"** shall mean any stock dividend, stock split, combination of shares, reorganization, recapitalization, reclassification or other similar event.

B.     Liquidation Rights.

(i)     Upon any liquidation, dissolution, winding up, or sale of all or substantially all stock or assets of the Company (whether by way of merger, acquisition, consolidation, or other transaction), whether voluntary or involuntary (each, a "**Liquidation**"), before any distribution or payment shall be made to the holders of any Common Stock, Series A Preferred Stock, or Series A-1 Preferred Stock, or Series B Preferred Stock, the holders of Series C Preferred Stock and the Series C-1 Preferred Stock shall be entitled simultaneously and each pro rata in accordance with its Liquidation Preference, to be paid out of the assets of the Company legally available for distribution, or the consideration received in such transaction, for each share of Series C Preferred and Series C-1 Preferred held by them, an amount equal to, in the case of the Series C Preferred Stock, (a) the Original Issue Price for the Series C Preferred Stock multiplied by a factor of 1.85, plus (b) all declared but unpaid dividends on such share of Series C Preferred Stock (as adjusted for any stock dividends, combinations, splits, recapitalizations and the like with respect to such shares after the filing date hereof) (the "**Series C Preference**"), and in the case of the Series C-1 Preferred Stock an amount equal to the Original Issue Price for the Series C-1 Preferred Stock multiplied by a factor of 1.07, plus all declared but unpaid dividends on such shares of Series C-1 Preferred Stock (as adjusted for any stock dividends, combinations, splits, recapitalizations and the like with respect to such shares after the filing date hereof) (the "**Series C-1 Preference**"). If, upon any Liquidation, the assets of the Company (or the consideration received in such transaction) shall be insufficient to make payment in full to all holders of Series C Preferred Stock and the Series C-1 Preferred Stock of the liquidation preferences set forth in this Section V(B)(i), then such assets (or consideration) shall be distributed among the holders of Series C Preferred Stock and Series C-1 Preferred Stock at the time outstanding, ratably in proportion to the full amounts to which they would otherwise be respectively entitled.

(ii)     Upon any Liquidation, after payment of all amounts due pursuant to Section V(B)(i) but before any distribution or payment shall be made to the holders of any Common Stock, Series A Preferred Stock, or Series A-1 Preferred Stock, the holders of Series B Preferred Stock shall be entitled to be paid out of the assets of the Company legally available for distribution, or the consideration received in such transaction, for each share of Series B Preferred

held by them, an amount equal to the Original Issue Price for the Series B Preferred Stock, plus all declared but unpaid dividends on such share of Series B Preferred Stock (as adjusted for any stock dividends, combinations, splits, recapitalizations and the like with respect to such shares after the filing date hereof) (the "**Series B Preference**"). If, upon any Liquidation, the assets of the Company (or the consideration received in such transaction) shall be insufficient to make payment in full to all holders of Series B Preferred Stock of the liquidation preference set forth in this Section V(B)(ii), then such assets (or consideration) shall be distributed among the holders of Series B Preferred Stock at the time outstanding, ratably in proportion to the full amounts to which they would otherwise be respectively entitled.

    (iii)  Upon any Liquidation, after payment of all amounts due pursuant to Section V(B)(i) and (ii) but before any distribution or payment shall be made to the holders of any Common Stock or Series A Preferred Stock, the holders of Series A-1 Preferred shall be entitled to be paid out of the assets of the Company legally available for distribution, or the consideration received in such transaction, for each share of Series A-1 Preferred Stock held by them, an amount equal to the Original Issue Price for the Series A-1 Preferred Stock, plus all declared but unpaid dividends on such share of Series A-1 Preferred Stock (as adjusted for any stock dividends, combinations, splits, recapitalizations and the like with respect to such shares after the filing date hereof) (the "**Series A-1 Preference**"). If, upon any Liquidation, the assets of the Company (or the consideration received in such transaction) shall be insufficient to make payment in full to all holders of Series A-1 Preferred Stock of the liquidation preference set forth in this Section V(B)(iii), then such assets (or consideration) shall be distributed among the holders of Series A-1 Preferred Stock at the time outstanding, ratably in proportion to the full amounts to which they would otherwise be respectively entitled.

    (iv)  Upon any Liquidation, after payment of all amounts due pursuant to Sections V(B)(i), (ii), and (iii) but before any distribution or payment shall be made to the holders of any Common Stock, the holders of Series A Preferred shall be entitled to be paid out of the assets of the Company legally available for distribution, or the consideration received in such transaction, for each share of Series A Preferred Stock held by them, an amount equal to the Original Issue Price for the Series A Preferred Stock, plus all declared but unpaid dividends on such share of Series A Preferred Stock (as adjusted for any stock dividends, combinations, splits, recapitalizations and the like with respect to such shares after the filing date hereof) (the "**Series A Preference**"). If, upon any Liquidation, the assets of the Company (or the consideration received in such transaction) shall be insufficient to make payment in full to all holders of Series A Preferred Stock of the liquidation preference set forth in this Section V(B)(iv), then such assets (or consideration) shall be distributed among the holders of Series A Preferred Stock at the time outstanding, ratably in proportion to the full amounts to which they would otherwise be respectively entitled.

    (v)  Upon any Liquidation, after payment of all amounts due pursuant to Section V(B)(i), (ii), (iii), and (iv), all remaining assets or proceeds legally available for distribution shall be distributed to the holders of the Common Stock and the Series Preferred *pro rata* based on the number of shares held by each such holder, treating for this purpose all shares of Series Preferred as if they had been converted to Common Stock pursuant to the terms hereof immediately prior to such Liquidation.

  C.  <u>Dividend Rights</u>.

    (i)  Holders of Series Preferred shall have no preferential right to receive dividends and shall receive distributions of dividends, if at all, when, as, and if such dividends are

5

declared on the Common Stock in accordance with Section V(C)(ii) below.

(ii)  So long as any shares of Series Preferred are outstanding, the Company shall not pay or declare any dividend, whether in cash or property, or make any other distribution on the Common Stock, or purchase, redeem or otherwise acquire for value any shares of Common Stock, unless the Company makes a pari passu dividend or distribution to the holders of all then outstanding shares of Series Preferred in a per share amount equal (on an as-if-converted to Common Stock basis) to the amount paid or set aside for each share of Common Stock, except for:

(a)  acquisitions of Common Stock by the Company pursuant to agreements which permit the Company to repurchase such shares at cost (or the lesser of cost or fair market value) upon termination of services to the Company; or,

(b)  distributions to holders of Common Stock in accordance with Section V(B)(v).

D.  Voting Rights.

1.  Restricted Class Voting. Except as expressly provided herein, in the Corporation's Stockholders Agreement, or as required by law, the holders of Common Stock and Series Preferred shall vote together and not as separate classes.

2.  Restricted Series Voting. Except as expressly provided herein, in the Corporation's Stockholders Agreement, or as required by law, there shall be no series voting.

3.  Series Preferred Stock. Each holder of Series Preferred shall be entitled to the number of votes equal to the number of shares of Common Stock into which the shares of Series Preferred held by such holder could be converted as of the record date. The holders of shares of the Series Preferred shall be entitled to vote on all matters on which the Common Stock shall be entitled to vote. Holders of Series Preferred shall be entitled to notice of any stockholders' meeting in accordance with the Bylaws of the Corporation. Fractional votes shall not, however, be permitted and any fractional voting rights resulting from the above formula (after aggregating all shares into which shares of Series Preferred held by each holder could be converted), shall be disregarded.

4.  Common Stock. Each holder of shares of Common Stock shall be entitled to one vote for each share thereof held.

E.  Adjustment in Authorized Common Stock. The number of authorized shares of Common Stock may be increased or decreased (but not below the number of shares of Common Stock then outstanding and the number of shares of Common Stock required to convert all outstanding shares of Series Preferred) by an affirmative vote of the holders of a majority of the Series C Preferred Stock.

F.  Conversion. The holders of Series Preferred shall have conversion rights as follows (the "Conversion Rights"):

1.  Right to Convert. Each share of Series Preferred shall be convertible, at the option of the holder thereof, at any time after the date of issuance of such share at the office of the

6

Corporation or any transfer agent for the Series Preferred, into that number of fully-paid, nonassessable shares of Common Stock determined by dividing the Original Issue Price for the relevant series by the Conversion Price for such series. (The number of shares of Common Stock into which each share of Series Preferred of a series may be converted is hereinafter referred to as the "**Conversion Rate**" for each such series.) Upon any decrease or increase in the Conversion Price for any series of Series Preferred, as described in this Section F, the Conversion Rate for such series shall be appropriately increased or decreased.

2.   Automatic Conversion. Each share of Series Preferred shall automatically be converted into fully-paid, non-assessable shares of Common Stock at the then effective Conversion Rate for such share (i) immediately prior to the closing of a firm commitment underwritten initial public offering pursuant to an effective registration statement filed under the Securities Act of 1933, as amended (the "Securities Act"), covering the offer and sale of the Corporation's Common Stock, provided that the per share price for such initial public offering exceeds the Original Issue Price for the Series C-1 Preferred Stock as may be adjusted from time to time in accordance with this Fifth Amended and Restated Certificate of Incorporation, or (ii) upon the receipt by the Corporation of a written request for such conversion from the holders of at least 65% of the Series C Preferred Stock and Series C-1 Preferred Stock then outstanding, or, if later, the effective date for conversion specified in such requests (each of the events referred to in (i) and (ii) are referred to herein as an "**Automatic Conversion Event**").

3.   Mechanics of Conversion. No fractional shares of Common Stock shall be issued upon conversion of Series Preferred. In lieu of any fractional shares to which the holder would otherwise be entitled, the Corporation shall pay cash equal to such fraction multiplied by the then fair market value of a share of Common Stock as determined by the Board of Directors. Before any holder of Series Preferred shall be entitled to convert the same into full shares of Common Stock, and to receive certificates therefor, such holder shall either (A) surrender the certificate or certificates therefor, duly endorsed, at the office of the Corporation or of any transfer agent for the Series Preferred or (B) notify the Corporation or its transfer agent that such certificates have been lost, stolen or destroyed and execute an agreement satisfactory to the Corporation to indemnify the Corporation from any loss incurred by it in connection with such certificates, and shall give written notice to the Corporation at such office that such holder elects to convert the same; provided, however, that on the date of an Automatic Conversion Event, the outstanding shares of Series Preferred shall be converted automatically without any further action by the holders of such shares and whether or not the certificates representing such shares are surrendered to the Corporation or its transfer agent; provided further, however, that the Corporation shall not be obligated to issue certificates evidencing the shares of Common Stock issuable upon such Automatic Conversion Event unless either the certificates evidencing such shares of Series Preferred are delivered to the Corporation or its transfer agent as provided above, or the holder notifies the Corporation or its transfer agent that such certificates have been lost, stolen or destroyed and executes an agreement satisfactory to the Corporation to indemnify the Corporation from any loss incurred by it in connection with such certificates. On the date of the occurrence of an Automatic Conversion Event, each holder of record of shares of Series Preferred shall be deemed to be the holder of record of the Common Stock issuable upon such conversion, notwithstanding that the certificates representing such shares of Series Preferred shall not have been surrendered at the office of the Corporation, that notice from the Corporation shall not have been received by any holder of record of shares of Series Preferred, or that the certificates evidencing such shares of Common Stock shall not then be actually delivered to such holder.

G.   Adjustments for Subdivisions Or Combinations of Common Stock. In the event the outstanding shares of Common Stock shall be subdivided (by stock split, by payment of a stock dividend or otherwise), into a greater number of shares of Common Stock, the Conversion Price of the Series Preferred in effect immediately prior to such subdivision shall, concurrently with the effectiveness of such subdivision, be proportionately decreased. In the event the

outstanding shares of Common Stock shall be combined (by reclassification or otherwise) into a lesser number of shares of Common Stock, the Conversion Prices in effect immediately prior to such combination shall, concurrently with the effectiveness of such combination, be proportionately increased.

  H. <u>Adjustments for Subdivisions or Combinations of Series Preferred</u>. In the event the outstanding shares of Preferred Stock or a series of Preferred Stock shall be subdivided (by stock split, by payment of a stock dividend or otherwise), into a greater number of shares of Preferred Stock, the Original Issue Price of the affected Preferred Stock in effect immediately prior to such subdivision shall, concurrently with the effectiveness of such subdivision, be proportionately decreased. In the event the outstanding shares of Preferred Stock or a series of Preferred Stock shall be combined (by reclassification or otherwise) into a lesser number of shares of Preferred Stock, the Original Issue Price of the affected series of Preferred Stock in effect immediately prior to such combination shall, concurrently with the effectiveness of such combination, be proportionately increased.

  I. <u>Adjustments for Reclassification, Exchange and Substitution</u>. Subject to the Liquidation Rights set forth in Section B above, if the Common Stock issuable upon conversion of the Series Preferred shall be changed into the same or a different number of shares of any other class or classes of stock, whether by capital reorganization, reclassification or otherwise (other than a subdivision or combination of shares provided for above), then, in any such event, in lieu of the number of shares of Common Stock which the holders would otherwise have been entitled to receive each holder of such Series Preferred shall have the right thereafter to convert such shares of Series Preferred into a number of shares of such other class or classes of stock which a holder of the number of shares of Common Stock deliverable upon conversion of such Series Preferred immediately before that change would have been entitled to receive in such reorganization or reclassification, all subject to further adjustment as provided herein with respect to such other shares.

  J. <u>Certificate as to Adjustments</u>. Upon the occurrence of each adjustment or readjustment of the Conversion Price pursuant to this ARTICLE V, the Corporation at its expense shall promptly compute such adjustment or readjustment in accordance with the terms hereof and furnish to each holder of Series Preferred a certificate setting forth such adjustment or readjustment and showing in detail the facts upon which such adjustment or readjustment is based. The Corporation shall, upon the written request at any time of any holder of Series Preferred furnish or cause to be furnished to such holder a like certificate setting forth (i) such adjustments and readjustments, (ii) the Conversion Price at the time in effect and (iii) the number of shares of Common Stock and the amount, if any, of other property which at the time would be received upon the conversion of Series Preferred.

  K. <u>Waiver of Adjustment of Conversion Price</u>. Notwithstanding anything herein to the contrary, any downward adjustment of the Conversion Price of any Series Preferred may be waived, either prospectively or retroactively and either generally or in a particular instance, by the consent or vote of the holders of the majority of the outstanding shares of such series. Any such waiver shall bind all future holders of shares of such Series Preferred.

  L. <u>Reservation of Stock Issuable Upon Conversion</u>. The Corporation shall at all times reserve and keep available out of its authorized but unissued shares of Common Stock solely for the purpose of effecting the conversion of the shares of the Series Preferred such number of its shares of Common Stock as shall from time to time be sufficient to effect the conversion of all then outstanding shares of the Series Preferred; and if at any time the number of authorized but unissued shares of Common Stock shall not be sufficient to effect the conversion of all then outstanding shares of the Series Preferred, the Corporation will take such corporate action as may, in the opinion of its counsel, be necessary to increase its authorized but unissued shares of Common Stock to such number of shares as shall be sufficient for such purpose.

M. <u>Notice</u>. Any notice required by the provisions of this ARTICLE V, to be given to the holders of Preferred Stock shall be deemed given if deposited in the United States mail, postage prepaid, and addressed to each holder of record at such holder's address appearing on the books of the Corporation.

N. <u>Adjustments Upon Issuance of Additional Shares</u>. Other than with respect to Excluded Securities, in the event the Corporation shall at any time after the date hereof issue or sell any Common Stock, Preferred Stock, or other Convertible Securities (collectively, "Securities") without consideration or for a consideration per share less than the applicable Conversion Price of the series C-1 Preferred Stock and/or the Series C Preferred Stock in effect immediately prior to such issue or sale, then and in such event, the Conversion Price of the Series C-1 Preferred Stock and/or Series C Preferred Stock (as applicable) shall be reduced, concurrently with such issue or sale, to a price determined by dividing:

> the sum of (A) the product derived by multiplying *(x)* the Series C or Series C-1 Conversion Price in effect immediately prior to such issue or sale by *(y)* the number of Fully Diluted Shares Outstanding immediately prior to such issue or sale, *plus* (B) the consideration, if any, received or receivable by the Corporation on account of such issue or sale;

> by

> the sum of (C) the number of Fully Diluted Shares Outstanding immediately prior to such issue or sale *plus* (D) the number of shares of new Securities so issued or sold.

## ARTICLE VI

### NO CLASS VOTING

Notwithstanding Section 242(b)(2) of the DGCL, the number of authorized shares of any class or classes of stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of the holders of a majority of the stock of the Corporation entitled to vote.

## ARTICLE VII

### DIRECTORS

The number of directors of the Corporation shall be as fixed from time to time by or pursuant to the Bylaws of the Corporation (the *"Bylaws")* or the Corporation's Stockholders Agreement, unless provided otherwise in this Fifth Amended and Restated Certificate of Incorporation or a certificate of designation relating to the rights of the holders of any class or series of preferred stock. No director of the Corporation need be a stockholder. If there is any inconsistency between the Bylaws and the Corporation's Stockholders Agreement with respect to the number of directors, the Stockholders Agreement shall supersede the Bylaws with respect to the determination of the number of directors. In furtherance of and not in limitation of powers conferred by statute, it is further provided that election of directors need not be by written ballot.

## ARTICLE VIII

<u>AUTHORITY OF BOARD OF DIRECTORS</u>

In furtherance and not in limitation of the powers conferred by statute, the Board of Directors is expressly authorized:

A. To make, alter or repeal the Bylaws of the Corporation.

B. To authorize and cause to be executed mortgages and liens upon the real and personal property of the Corporation.

C. To set apart out of any of the funds of the Corporation available for dividends a reserve or reserves for any proper purpose and to abolish any such reserve in the manner in which it was created.

D. To designate one or more committees, each committee to consist of one or more of the directors of the Corporation. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. The Bylaws may provide, that, in the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not he or they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member. Any such committee, to the extent provided in the resolution of the Board of Directors, or in the Bylaws of the Corporation, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to amending this Fifth Amended and Restated Certificate of Incorporation, adopting an agreement of merger or consolidation, recommending to the stockholders the sale, lease or exchange of all or substantially all of the Corporation's property and assets, recommending to the stockholders a dissolution of the Corporation or a revocation of a dissolution, or amending the Bylaws of the Corporation; and, unless the resolution or Bylaws expressly so provide, no such committee shall have the power or authority to declare a dividend or to authorize the issuance of stock.

E. When and as authorized by the stockholders in accordance with statute, to sell, lease, exchange or otherwise dispose of all or substantially all of the property and assets of the Corporation, including its good will and its corporate franchises, upon such terms and conditions and for such consideration, which may consist in whole or in part of money or property including shares of stock in, and/or other securities of, any other corporation or corporations, as its Board of Directors shall deem expedient and for the best interests of the Corporation.

F. To fix, determine and vary from time to time the amount to be maintained as surplus and the amount or amounts to be set apart as working capital.

G. To authorize the payment of compensation to the directors for services to the Corporation, including fees for attendance at meetings of the Board of Directors, of the executive committee of the Board of Directors, and of other committees, and to determine the amount of such compensation and fees.

    H.    To authorize the issuance from time to time of shares of stock of the Corporation of any class, whether now or hereafter authorized, or securities convertible into shares of its stock of any class or classes, whether now or hereafter authorized, for such consideration as may be deemed advisable by the Board of Directors and without any action by the stockholders.

    I.    To designate the reclassification from time to time of unissued shares of Common Stock of the Corporation as preferred stock in one or more series, and to fix by resolution the powers, preferences, and rights, and the qualifications limitations, and restrictions of any class of stock, unless fixed in this Fifth Amended and Restated Certificate of Incorporation, without any action by the stockholders.

## ARTICLE IX

### DURATION

The Corporation is to have perpetual existence.

## ARTICLE X

### LIMITATION OF LIABILITY

    No director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except that this provision shall not limit liability of a director (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) pursuant to Section 174 of the DGCL, or (iv) for any transaction from which the director derived an improper personal benefit.

    If the DGCL or any other statute of the State of Delaware, hereafter is amended to authorize corporate action further eliminating or limiting the personal liability of directors of the Corporation, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the statutes of the State of Delaware, as so amended, and such elimination or limitation of liability shall be in addition to, and not in lieu of, the limitation of the liability of a director provided by the foregoing provisions of this ARTICLE X.

    Any repeal or amendment of this ARTICLE X shall be prospective only and shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or amendment.

## ARTICLE XI

### INDEMNIFICATION

    To the maximum extent permitted by law, the Corporation shall indemnify fully each person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a director or officer of the Corporation, or is or was serving at the request of the Corporation as a director, officer, trustee of, or in a similar capacity with, another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, against all expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person or on such person's behalf in

11

connection with such action, suit or proceeding and any appeal therefrom.

To the maximum extent permitted by law, the Corporation may indemnify fully each person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was an employee or agent of the Corporation, or is or was serving at the request of the Corporation as an employee or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with such action, suit or proceeding.

The Corporation shall not indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person unless the initiation thereof was approved by the Board of Directors.

The Corporation shall, if so requested by a director or officer, advance expenses (including attorneys' fees) incurred by a director or officer in advance of the final disposition of such action, suit or proceeding upon the receipt of an undertaking by and on behalf of the Director or officer to repay such amount if it shall ultimately be determined that such director or officer is not entitled to indemnification. The Corporation may advance expenses (including attorneys' fees) incurred by an employee or agent in advance of the final disposition of such action, suit or proceeding upon such terms and conditions, if any, as the Board of Directors deems appropriate.

The indemnification rights provided in this ARTICLE XI (i) shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any law, agreement or vote of stockholders or disinterested directors or otherwise, and (ii) shall inure to the benefit of the heirs, executors and administrators of such persons.

## ARTICLE XII

### REDEMPTION RIGHT

At any time following the five-year anniversary of the date on which this Fifth Amended and Restated Certificate of incorporation is accepted for filing by the Delaware Secretary of State (the "Filing Date') each holder of Series C-1 Preferred Stock may elect by delivery of written notice to the Corporation (the "Redemption Notice") to have all (but not less than all) of its Series C-1 Preferred Stock redeemed by the Corporation for an amount equal to the Liquidation Value of such shares. The term "Liquidation Value" means the amount that would be payable for such shares pursuant to Article V(B) hereof in the event the entire Corporation were to be sold for fair market value in a third party transaction. For purposes hereof, the fair market value of the Corporation for such transaction shall be determined by agreement between the Corporation and such holder(s) except as follows. Unless otherwise agreed by the Corporation and the Redeeming Shareholder, if the holder of Series C-1 Preferred Stock exercising this redemption right (the "Redeeming Shareholder") and the Corporation are unable to agree on the fair market value of the Corporation within 30 days after delivery of the Redemption Notice, then the fair market value of the Corporation shall be promptly determined by a qualified appraiser that is mutually selected by the Corporation and the Redeeming Shareholder. Unless otherwise agreed by the Corporation and the Redeeming Shareholder, if the Corporation and the Redeeming Shareholder are not able to agree on a qualified appraiser within 45 days after delivery of the Redemption Notice, then each shall select a qualified appraiser and provide notice to the other within 60 days after delivery of the Redemption Notice. Each such qualified appraiser shall promptly calculate the fair market value of the Corporation and shall submit a report setting forth

such valuation to a third qualified appraiser mutually selected by the first two appraisers. Such third appraiser shall promptly select the valuation prepared by one of the other two appraisers that, in such third appraiser's judgment, best reflects the fair market value of the Corporation and the value so selected shall be used to calculate the Liquidation Value. The Corporation and the Redeeming Shareholder shall each pay one-half the fees of any mutually-selected appraiser. The Corporation shall pay all of the fees of any appraiser selected solely by the Corporation, and the Redeeming Shareholder shall pay all of the fees of any appraiser selected solely by the Redeeming Shareholder. The Corporation and the Redeeming Shareholder shall use reasonable efforts to assure that the valuation process is completed promptly. Unless otherwise agreed by the Corporation and the Redeeming Shareholder, the closing of the redemption shall occur within 60 days after the fair market value of the Corporation has been determined. The amount payable in respect of such redemption shall be paid by the Corporation as follows: At least 25% in cash upon redemption and the remainder pursuant to the terms of a three-year promissory note (secured by the redeemed shares) providing for twelve consecutive quarterly payments each consisting of one-twelfth of the principal amount of such promissory note plus all accrued interest. Interest on the outstanding balance of such promissory note shall accrue at a floating interest rate equal to The Wall Street Journal Prime Rate plus two percentage points.

## ARTICLE XIII

### AMENDMENTS

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Fifth Amended and Restated Certificate of Incorporation in the manner now or hereafter prescribed herein and by the laws of the State of Delaware, and all rights conferred upon stockholders herein are granted subject to this reservation.

IN WITNESS WHEREOF, the Corporation has caused this Fifth Amended and Restated Certificate of Incorporation of Transactis, Inc. to be signed by its Chief Executive Officer on January 28, 2009.

                TRANSACTIS, INC.

                By: /s/ Joseph Proto
                    /s/ Joseph Proto,
                    Chief Executive Officer

The UNDERSIGNED, Chief Executive Officer of Transactis, Inc., a Delaware corporation, who executed on behalf of said corporation the foregoing Fifth Amended and Restated Certificate of Incorporation, of which this certificate is made a part, hereby acknowledges, in the name and on the behalf of said corporation, the foregoing Fifth Amended and Restated Certificate of Incorporation to be the corporate act of said corporation and further certifies that, to the best of his knowledge, information and belief, the matters and facts set forth therein with respect to the approval thereof are true in all material respects, under the penalties of perjury.

                /s/ Joseph Proto
                /s/ Joseph Proto

14