```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
MARKETSHARE CORP.,                   :
                                     :      21-cv-750 (JSR)
          Plaintiff,                 :
                                     :
          -v-                        :      MEMORANDUM ORDER
                                     :
TRANSACTIS, INC. and                 :
MASTERCARD, INC.                     :
                                     :
          Defendants.                :
                                     :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

Plaintiff MarketShare Corporation ("MarketShare") brought this five-count complaint against defendants Transactis, Inc. ("Transactis") and Mastercard, Inc. ("Mastercard") alleging that the defendants wrongfully refused to issue shares of common stock of Transactis in breach of various agreements and that Transactis fraudulently misrepresented the fair market value and exercise price of the stock options. On April 26, 2021, the Court, by bottom-line order, dismissed the complaint. Dkt. No. 22. This Memorandum Order explains the reasons for that ruling and directs the closing of the case.

## Background[1]

From 2004 through 2007, MarketShare provided Transactis with

---

[1] For the purposes of this motion, the well-pleaded allegations in the complaints are assumed to be true.

software development services. Compl., Dkt. No. 1, ¶ 1. The arrangement was initially governed by a consulting agreement dated March 30, 2005. Id. ¶ 16. By June 30, 2007, MarketShare had earned $205,950 in fully vested common stock of Transactis but had not been issued any stock, and the parties had not yet reached an agreement for the price at which that stock could be purchased by MarketShare. Id. ¶¶ 19-20.

MarketShare eventually agreed that, in lieu of receiving shares of common stock of Transactis, it would "receive fully-vested stock options at the then-fair market value of Transactis' common stock as represented by Transactis." Id. ¶ 22. Under the relevant agreement, since Transactis was a private company, the fair market value had to be "be determined in good faith by the Board." Id. ¶ 67. Transactis represented that the fair market value of its common stock was $0.56 per share before March 12, 2007 and $0.395 per share thereafter. Id. ¶ 24. The parties thereafter agreed to use a single hybrid price -- $0.45 per share -- for all stock options. Id. ¶ 35.

MarketShare and Transactis memorialized this agreement in a 2008 Agreement. Id. ¶ 37; see also Dkt. No. 8-1 ("2008 Agreement"). The 2008 Agreement provides that Transactis shall issue to MarketShare stock options (the "Stock Options") to "purchase 412,216 shares of common stock of [Transactis], at an exercise

price of $0.45, in full satisfaction of all claims to options or other equity compensation under the [2005 agreement]." 2008 Agreement, ¶ 1. The 2008 Agreement also acknowledged that the Stock Options were "subject to dilution upon any financing rounds," would "carry a maximum 10-year exercise period," and would be issued under a separate grant notice. Id. ¶¶ 1-2; see also Dkt. No. 8-2 (the "Grant Notice"). The Grant Notice, in turn, specified that the Stock Options would be "subject to all of the terms and conditions . . . in the Stock Option Agreement." Grant Notice; see also Dkt. No. 8-3 (the "Stock Option Agreement").

Per the Grant Notice, MarketShare received the option to purchase 416,216 shares of Transactis common stock at an exercise price of $0.45 per share. MarketShare could receive those shares by tendering the so-called "total exercise price" -- $187,292.20 (= 416,216 x $0.45) -- via one of the permitted payment methods. Id. As relevant here, those payment methods included (1) "by cash or check" or (2) "by delivery of vested options held pursuant to this Grant Notice, at the fair market value of the underlying shares at the time of exercise." Id.

MarketShare stopped providing services to Transactis on October 20, 2008. Compl. ¶ 44. Between January 2009 and September 2010, Transactis issued approximately 29 million stock options to other grantees with an exercise price and fair market value of

-3-

$0.06 per share -- a fair market value substantially lower than the $0.45 represented by Transactis in negotiations a few months earlier. Id. ¶¶ 62, 66. In August 2010, Transactis merged with a third-party and underwent a 35-1 reverse stock split.[2] See id. ¶ 48; see also Amendment to the Sixth Amended Certificate of Incorporation of Transactis, Inc. ("6th Amended COI"), Dkt. No. 20-1 (discussing the reverse stock split).[3] And, in April 2016, following that reverse stock split, Transactis offered to repurchase shares of common stock from shareholders for $2.00 per share. Compl. ¶ 46.

In March 2018, MarketShare, unaware of these developments, contacted Transactis to inquire about exercising the Stock Options. Id. ¶¶ 44-45. Transactis stated that, because of the reverse stock split, MarketShare now owned "11,891 stock options with an exercise price of $17.43 per share." Id. ¶ 46. Transactis explained that the Stock Options had been reduced by a factor of 35 (416,216 / 35 = 11,891) and the exercise price -- which

---

[2]   A reverse stock split consolidates the number of outstanding shares into fewer, proportionally more valuable, shares. For example, 35 shares valued at $0.06 per share would be consolidated into a single share valued at $2.10(=35 x $2.10).

[3]   Because the 6th Amended COI was filed with the Delaware Secretary of State, the Court can take judicial notice of it in connection with this motion to dismiss. See, e.g., Chevron Corp. v. Salazar, 807 F. Supp. 2d 189, 193 n.5 (S.D.N.Y. 2011).

Transactis initially mistakenly identified as $0.498 -- was increased by the same factor ($0.498 x 35 = $17.43). Transactis would later clarify in September 2019 that the exercise price was $15.75 (= $0.45 x 35). Id. ¶ 79.

"Surprised" by these developments, MarketShare was unsure whether the exercise price was $0.45 (as specified in the Grant Notice) or $17.43 (as initially identified by Transactis following the reverse stock split). To be safe, MarketShare attempted in April 2018 to exercise the Stock Options by delivering "the options held pursuant to the Grant Notice, at the fair market value of the underlying shares at the time of the exercise." Id. ¶¶ 52-53, 58. Transactis declined to issue the shares. Initially, Transactis told MarketShare that the Stock Options "were not timely exercised and had previously been terminated." Id. ¶¶ 57, 59.

In May 2019, Transactis was acquired by Mastercard for $14.90 per share of common stock. Id. ¶ 77. In September 2019, counsel for Mastercard informed MarketShare that the Stock Options "had no value," since the fair market value of the underlying shares was lower than the $15.75 exercise price. Id. ¶ 79.

In January 2021, MarketShare sued, asserting claims against Transactis for breach of contract, fraud, and breach of the implied covenant of good faith and fair dealing; and against Mastercard for unjust enrichment. Id. ¶¶ 80-118.

**Legal Standard**

In order to survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[4] When deciding a motion to dismiss, the Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Courts may also consider: (1) facts subject to judicial notice; (2) documents incorporated in the complaint by reference; or (3) documents integral to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

**Discussion**

**I. Breach of Contract (Count One)**

MarketShare alleges that Transactis breached the 2008 Agreement, the Grant Notice, and the Stock Option Agreement "by failing to issue to Plaintiff shares of common stock based on the fair market value of the vested Stock Options after having received payment" by way of delivery of the Stock Options. Compl. ¶ 85. Transactis argues that MarketShare fails to state a claim as to any of those contracts because, among other things, the complaint

---

[4] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

fails to plausibly allege that MarketShare paid the total exercise price when it attempted to exercise the Stock Options.[5]

The Court agrees with Transactis. To perform under the relevant agreements, MarketShare had to pay the $187,297.20 total exercise price; only then would it be entitled to receive the shares of Transactis common stock. MarketShare sought to pay for the shares "by delivery of vested options held pursuant to th[e] Grant Notice, at the fair market value of the underlying shares at the time of the exercise." This method of payment, just like a cash payment, required that MarketShare pay the total exercise value before receiving the shares. If, for example, the fair market value of the underlying shares were only worth $100,000, then delivering the vested options – like delivering $100,000 in cash -- would not satisfy the total exercise price. But the complaint does not include any allegation from which it could be reasonably

---

[5] Transactis also argues that MarketShare has failed to state a claim for breach of the 2008 Agreement, in particular because that agreement imposes no obligations other than issuing to MarketShare the Stock Options at the agreed-upon price and volume. See Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mem."), Dkt. No. 16, at 9. As MarketShare persuasively responds, however, the 2008 Agreement also gave MarketShare a "10-year exercise period" that Transactis allegedly breached by claiming that the Stock Options had expired by March 2018. See Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem."), Dkt. No. 18, at 3. Accordingly, if Transactis had been required to tender the shares under the Grant Notice and the Stock Option Agreement, it would also have breached the 2008 Agreement by having failed to do so.

inferred that the fair market value of the underlying shares was equal to or greater than the total exercise price at the time MarketShare sought to exercise the Stock Options. Because MarketShare failed to allege that it performed under these agreements, the breach of contract claim fails.

MarketShare responds in three ways, but none is persuasive. First, MarketShare disputes that there is any requirement "that, at the time MarketShare exercised the Stock Options, the fair market value of the common stock of Transactis be higher than the exercise price of the Stock Options." Pl. Mem. at 4. This is correct, but irrelevant. It is true that, regardless of the underlying value of the common stock, MarketShare had the choice to exercise the Stock Options by delivering the total exercise value in cash. This might not make much financial sense, but it is well within MarketShare's contractual rights. Because the underlying common stock was worth less than the total exercise price, however, MarketShare cannot meet its payment obligations simply by tendering the Stock Options.

Second, MarketShare argues that it _did_ pay the total exercise price since "it can be inferred" that "the fair market value of the common stock of Transactis was higher than the exercise price of $0.45 per share set out in the Grant Notice." Pl. Mem. at 5. This argument, however, overlooks the reverse stock split, which

increased the exercise price from $0.45 to $15.75. To the extent MarketShare is indirectly contesting the effect of reverse stock split, the relevant agreements foreclose that argument. See, e.g., Stock Option Agreement ¶ 2 (permitting adjustments to number of shares and exercise price of stock options under certain circumstances); Equity Incentive Plan, Dkt. No. 8-4, ¶ 12(e) (granting discretion to the Transactis board to amend options if that amendment would not impair the rights of the holder). Because MarketShare nowhere plausibly alleges that the fair market value of the underlying shares met or exceeded $15.75 at the time of exercise, it has failed to allege that it paid the total exercise price.

Finally, MarketShare argues that, even if it did not pay the total exercise price, it was entitled to exercise some portion of the Stock Options without exercising all of them. See Stock Option Agreement ¶ 5 ("Payment of the exercise price is due in full upon exercise of all or any part of your option."). This argument confuses the nature of stock options. Stock options are not fungible currency. They are an agreement to buy shares at a contractually specified price: the exercise price. MarketShare's theory -- that it could transform two options to purchase shares at an exercise price into one option to purchase shares at some reduced exercise price -- has no basis in the relevant agreements

or common sense. In any event, even if MarketShare were entitled to exercise some portion of the Stock Options, that is not what it did. The Notice of Exercise, pursuant to which MarketShare sought to exercise the Stock Options, states that MarketShare attempted to exercise "<u>all</u> options held by MarketShare Corp." Dkt. No. 8-6 (emphasis added).

For these reasons, the Court dismissed Count One (the breach of contract claim)

## II. Fraud (Count Two)

There are two alternative bases to MarketShare's fraud claim: (1) that Transactis fraudulently <u>inflated</u> the fair market value of the common stock offered to MarketShare in April 2008; and (2) that Transactis fraudulently <u>deflated</u> the fair market value of the common stock offered to other grantees between January 2009 and September 2010. Compl. ¶ 95. Under either theory, MarketShare must allege (1) a material misrepresentation or omission of fact; (2) that Transactis knew to be false; (3) that Transactis made with the intent to defraud; (4) upon which MarketShare reasonably relied; and (5) that caused injury to MarketShare. <u>See</u> <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 291 (2d Cir. 2006). In addition, fraud claims "must satisfy Rule 9(b), which requires that the circumstances constituting fraud . . . shall be stated with particularity." <u>ATSI</u>, 493 F.3d at 99 (quoting Fed. R. Civ. P.

9(b)).

### A. The Deflation Theory

MarketShare alleges that Transactis knowingly <u>deflated</u> the fair market value and exercise price of the $0.06 stock options granted to other grantees in bad faith and in violation of the relevant agreements, resulting in an economic advantage to other grantees at MarketShare's expense. <u>Id.</u> The deflation theory fails, however, because MarketShare could not have relied on false statements that were made to other grantees <u>after</u> MarketShare had already entered into the 2008 Agreement.

### B. The Inflation Theory

MarketShare alternatively alleges that Transactis knowingly <u>inflated</u> the fair market value and exercise price of the common stock of the $0.45 Stock Options in bad faith and in violation of the relevant agreements, resulting in MarketShare receiving fewer options that it would have received if the $0.06 fair market value and exercise price had been used. Under Rule 9(b), MarketShare must "allege facts that give rise to a strong inference of fraudulent intent." <u>Lerner</u>, 459 F.3d at 290-291. "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior

or recklessness." Id.

MarketShare has failed to allege facts that show both motive and opportunity to commit fraud. It is not disputed that Transactis had the opportunity to defraud MarketShare. See In re Omega Healthcare Investors, Inc., Sec. Litig., 375 F. Supp. 3d 496, 509 (S.D.N.Y. 2019) ("Courts typically assume corporations, corporate officers, and corporate directors would have the opportunity to commit fraud if they so desired."). But the complaint fails to allege with particularity that Transactis had the motive to commit fraud. At most, the complaint alleges that Transactis fraudulently inflated the fair market value of the shares to dispose of MarketShare's claims for compensation under the earlier agreements. But "the motive to improve one's financial position by itself does not satisfy the requirement to plead fraudulent intent." See Chill v. General Elec. Co., 101 F.3d 263, 268 (2d Cir. 1996) (holding that a "generalized motive" to earn a profit, "one which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter"). Moreover, the complaint acknowledges that Transactis proactively informed MarketShare during negotiations that it was entitled to more shares than either party had realized. See Compl. ¶ 29. Such allegations of good faith undermine any inference of fraudulent intent.

MarketShare has also failed to allege circumstantial evidence of recklessness. MarketShare argues that recklessness can be inferred from the allegations that Transactis refused to provide to MarketShare a basis for its April 2008 valuation. Pl. Mem. at 11. MarketShare does not allege, however, that Transactis was under any duty to disclose the basis for the valuation. That Transactis declined to do so, then, cannot give rise to a strong inference of fraudulent intent.

For these reasons, the Court dismissed Count Two (the fraud claim).

### III. Count Three (Implied Covenant of Good Faith and Fair Dealing)

MarketShare seeks to recover under the covenant of good faith and fair dealing implicit in all New York contracts. MarketShare alleges Transactis violated the implied covenant by fraudulently deflating the fair market value of the stock options in 2009 and 2010. Compl. ¶¶ 100-106. Transactis moved to dismiss this claim as time-barred.

A claim for breach of the implied covenant of good faith and fair dealing has a six-year statute of limitations, and such a claim accrues when the alleged breach occurs. N.Y. C.P.L.R. § 213(2). MarketShare first argues that the claim did not accrue until 2018, when MarketShare sought to exercise the options. To

the extent the claim is based on Transactis' failure to deliver the shares in April 2018, however, the claim must be dismissed as duplicative of the breach of contract claim. See Concesionaria DHM, S.A. v. Int'l Fin. Corp., 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) ("[C]ourts routinely dismiss a claim for breach of an implied covenant of good faith as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract.").

MarketShare also argues that, if the claim accrued in 2010, when Transactis made the alleged misrepresentations, passage of the statute of limitations should be estopped because Transactis "wrongfully concealed" these misrepresentations until MarketShare inquired about the Stock Options in 2018. Pl. Mem. at 19. Such tolling is appropriate where the plaintiff establishes, among other things, that the defendant wrongfully concealed material facts relating to the defendant's wrongdoing. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 157 (2d Cir. 2012). The complaint, however, is lacking any allegation that Transactis took some action that prevented MarketShare from learning about the status of the Stock Options before 2018. Indeed, if the exercise period were three years, MarketShare would likely have inquired in 2011 -- well within the statutory period. That MarketShare only

-14-

discovered the other stock options in 2018 has far more to do with the length of the exercise period and MarketShare's failure to conduct due diligence, than with any wrongful concealment on the part of Transactis.

For these reasons, the Court dismissed Count Three (the alleged violation of the implied covenant of good faith and fair dealing).

**IV.  Count Five (Unjust Enrichment)**

MarketShare alleges that Mastercard "has been unjustly enriched by having acquired all capital stock of Transactis without having made any payment to Plaintiff for common stock of Transactis that Plaintiff legally owns pursuant to its proper and timely exercise of the Stock Options." Compl. ¶ 115. The elements of an unjust enrichment claim are "(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (2012). Transactis moved to dismiss the claim because, among other reasons, it would not be against equity and good conscience for Mastercard to retain the shares of Transactis stock. Because, as discussed above, MarketShare failed to allege that it properly exercised the Stock Options, it does not legally own the common stock that Mastercard has acquired. Therefore, equity and

good conscience do not require Mastercard to deliver the shares to MarketShare. For that reason, Count Five was dismissed (relating to unjust enrichment against Mastercard).

### V. Count Four (Declaratory Judgment)

Styled as an independent cause of action, Count Four seeks declaratory judgment that the proper valuation of the Stock Options should have been $0.06 and that it is entitled to payment of such shares based on its exercise. Compl. ¶ 113. Declaratory judgments, however, are remedies, not causes of action. See Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010). Because MarketShare's claims have all been dismissed, its request for declaratory relief must also be dismissed. For that reason, Count Four was dismissed.

### Conclusion

For the foregoing reasons, the Court, by bottom-line order, granted Transactis' motion to dismiss the complaint. Clerk to enter judgment and close the case.

SO ORDERED.

Dated:   New York, NY
         May 12, 2021

JED S. RAKOFF, U.S.D.J.